[Cite as *Gerston v. Parma VTA, L.L.C.*, 2024-Ohio-3005.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KIMBERLEE GERSTON, TRUSTEE,
ET AL.,                                     :

      Plaintiffs-Appellants,        :

                                       No. 112607

      v.                            :

PARMA VTA, LLC, ET AL.,                     :

      Defendants-Appellees.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 8, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-14-829947

---

### *Appearances:*

Zagrans Law Firm, LLC,  and Eric H. Zagrans; Goldberg Legal Co., L.P.A., and Steven M. Goldberg; and Richardson Patrick Westbrook & Brickman, LLC, and Karl E. Novak, *for appellants*.

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., Mark I. Wallach, and Lawrence R. Acton, *for appellees*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Kimberlee A. Gerston ("Gerston"), trustee of the Gerston Family Trust ("the trust"), and Parma GE 7400 ("GE 7400") (collectively "appellants") appeal

four judgments from the trial court, one dated May 19, 2022; two from August 24, 2022; and one from March 14, 2023, following the damages portion of the bifurcated trial of this matter. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} This matter has been pending since 2014 and is currently before this court for the fourth time. *Gerston v. Parma VTA, L.L.C.*, 2018-Ohio-2185 (8th Dist.) ("*Gerston I*"); *Gerston v. Parma VTA, L.L.C.*, 2020-Ohio-3455 (8th Dist.) ("*Gerston II*"); and *Gerston v. Parma VTA, LLC*, 2023-Ohio-1563 (8th Dist.) ("*Gerston III*"). *Gerston II* and *Gerston III* pertain to issues surrounding arbitration and are unrelated to the instant appeal.

{¶ 3} In 2005, Alan Robbins ("Robbins") approached his friend Kenneth Gerston ("Kenneth") about purchasing a piece of commercial real estate located at 7400 Broadview Road in Parma, Ohio ("the property"), which is currently leased by a grocery store tenant, Giant Eagle. Robbins and Kenneth agreed to purchase the property through separate limited liability companies formed for the sole purpose of effectuating this purchase. Kenneth formed GE 7400, LLC and was the sole member during his lifetime. Robbins formed Parma VTA LLC ("Parma VTA").

{¶ 4} GE 7400 and Parma VTA owned and managed the property pursuant to a tenancy-in-common agreement ("TIC agreement"). Pursuant to the agreement, GE 7400 owned a 76.62 percent majority interest in the property and Parma VTA owned a minority 23.38 percent interest in the property.

{¶ 5} As part of the purchase, both GE 7400 and Parma VTA assumed an existing loan on the property in the amount of $8,067,791.21, as evidenced by a consent to transfer a loan assumption agreement dated October 4, 2005 ("the consent agreement"). Therefore, the parties were required to put up the difference between the outstanding loan and the $11,151,311.21 purchase price of the property. Robbins put down $500,000 in earnest money that was utilized for the purchase price. The transaction closed on October 4, 2005, and Kenneth and Robbins agreed that Robbins would loan the entirety of the difference between the existing loan and the purchase price to GE 7400.

{¶ 6} For the mortgage lender to permit the transfer of the property to GE 7400, the consent agreement required Robbins and Kenneth to assume the guarantor's obligation and execute personal guarantee agreements, guaranteeing GE 7400 and Parma VTA under the mortgage loan. Robbins and Kenneth both signed personal guaranties of the $8,067,791.21 loan.

{¶ 7} Kenneth passed away suddenly and unexpectedly on August 31, 2010. His membership interest in GE 7400 passed to the trust, of which Gerston was the trustee.

{¶ 8} After Kenneth's death, Robbins and the other appellees "attempted to strip [the trust] of ownership interest in the property and GE 7400." In February 2014, Robbins attempted to sell a portion of GE 7400's ownership to a buyer. The intended buyer, while doing their due diligence, was concerned that Robbins did not

have legal ownership of GE 7400 and demanded to see proof that Kenneth had assigned his interest in GE 7400 to Robbins.

{¶ 9} Robbins contacted Gerston and asked that she execute a document that purported to disclaim her financial or ownership interest in the property. The document also provided that GE 7400 was owned solely by one of Robbins's other business entities. Gerston declined to sign the agreement and asked Robbins to produce something from Kenneth demonstrating that this was his intent. Robbins was unable to produce such proof.

{¶ 10} Parma VTA, LLC; Robbins; Leah Robbins; GE 7400; and others (collectively, "appellees"), instead caused a certificate of amendment to be filed with the secretary of state in Delaware and attempted to amend the certificate of formation of GE 7400 to reflect that one of Robbins's other business entities was the sole owner of GE 7400. Neither Kenneth nor Gerston signed off on this purported transfer of ownership.

{¶ 11} Even though Kenneth never transferred or changed his ownership in GE 7400 during his lifetime, appellees amended transactional documents to provide that one of Robbins's entities was the sole member of GE 7400 and that Leah Robbins was the manager of GE 7400. In March 2016, Leah Robbins signed a limited warranty deed transferring GE 7400's 76.62 percent ownership to Parma VTA, without Gerston's knowledge and without any consideration.

{¶ 12} Also relevant, appellees, while purporting to operate on behalf of GE 7400, refinanced the existing mortgage loan with Ladder Capital.

{¶ 13} Appellants filed the instant action in 2014 against appellees, seeking a declaration that the trust was the sole member of GE 7400 rather than the appellees.

{¶ 14} The complaint alleged that after Kenneth passed away, the appellees had "conspired and colluded to strip the Gerston Trust of its ownership interest in [GE 7400] and the underlying [p]roperty." The complaint also alleged that appellees deprived appellants of rent money from the property. In addition to a judgment declaring that the trust owned 100 percent of GE 7400, appellants sought damages, including punitive damages, stemming from the appellees' alleged activities pursuant to the complaint.

{¶ 15} Early in this case, Parma VTA filed a motion to bifurcate the trial that was granted by the court. The court divided the trial into two phases and designated that "Phase I" would address the rights of the parties regarding GE 7400 and "Phase II" would address damages.

{¶ 16} Phase I began on December 8, 2016, and lasted for eight days. The trial judge determined that the trust was the sole member of GE 7400 and that the trust was a majority owner of the property, owning a 76.62 percent interest in the property. The trial court also found that all transactions "involving or that purported to involve [GE 7400] after the death of [Kenneth] are void and of no effect." The appellees appealed and this court affirmed the trial court's judgment in *Gerston I*.

{¶ 17} Pertinent to this appeal, the *Gerston I* Court determined that

after [Kenneth's] death, in 2014, Parma VTA (Robbins's entity) refinanced the loan on the property with Ladder Capital, which was not a party to this action, and the original loan with Global [Mortgage], who also was not a party to the action, was paid off on behalf of Parma GE 7400 and Parma VTA. Additionally, there was a lease between Parma GE 7400 and Parma VTA, as lessors, and Giant Eagle, as lessee; Parma GE 7400 assigned its rights under the lease to Parma VTA.

*Gerston I* at ¶ 36.

{¶ 18} After *Gerston I* was released, the appellees appealed to the Ohio Supreme Court. The Ohio Supreme Court declined jurisdiction, leaving this court's decision intact. *Gerston v. Parma VTA, L.L.C.*, 2018-Ohio-4092.

### A. Post-Phase I Procedural History

{¶ 19} After this court's affirmance and the Supreme Court's denial of jurisdiction, the case returned to the trial court. The appellees filed a counterclaim, alleging that in 2005, the appellees made an unsecured loan to the GE 7400 in the amount of $2,464,000 and that Kenneth and Robbins had agreed to a post-closing interest rate of 10 percent per annum on the loan ("the acquisition loan"). In other words, GE 7400 had not paid anything towards the purchase of the property in question because Parma VTA had fronted the purchase price and GE 7400, allegedly, had not paid that amount back.

{¶ 20} The appellees sought "an equitable lien" against GE 7400 in the amount of $2,464,000 plus interest and "that [appellants] disgorge the value of any benefit conferred upon it by [appellees], from any assets that can be traced to such benefits." They also sought restitution and quantum meruit. The only document

attached to the counterclaim was a copy of the judgment entry demonstrating that any claims for damages would be addressed in Phase II.

{¶ 21} After appellees' counterclaim was filed, appellants filed a motion to realign GE 7400 as a plaintiff in the underlying matter based on the trial court's determination in Phase I that GE 7400 was solely owned by the trust. Appellants also filed a supplemental complaint that further alleged claims for damages stemming from appellees' alleged conduct, including damages for "fraudulent conduct," tortious interference with a business relationship or economic interest, intentional infliction of emotional distress, and restitution of the withheld distributions that appellants should have received under the TIC agreement. Appellants also sought a declaration that GE 7400 is the sole manager of the property.

{¶ 22} Appellees answered, including an affirmative defense for setoff, and counterclaimed in response to the supplemental complaint. The counterclaim contained the same allegations pertaining to the acquisition loan, but also alleged unjust enrichment as a result of the trial court's determination in Phase I that the trust was the sole member of GE 7400. Pertinently, the counterclaim alleged:

> Plaintiffs have received benefits to which they are not entitled, as outlined above, and which include, but are not limited to: (1) ownership of Parma GE 7400 despite putting no money towards the assets Parma GE 7400 owns; (2) that Plaintiffs at all relevant times paid no taxes relating to Parma GE 7400; (3) that Plaintiffs paid no costs and expenses related to the operation of Parma GE 7400; (4) the Acquisition Loan to Parma GE 7400; and (5) other benefits relative to the Property, including, but not limited to, the payoff of the Lender

Principal Loan [Global Mortgage] which was assumed by Parma VTA in the amount of approximately $8,087,791.22.

Appellees' Counterclaim, filed 4/11/2019, ¶ 41.

{¶ 23} In total, the counterclaim contained six counts, all pertaining to the acquisition loan and the claims for unjust enrichment related to the trial court's determination in Phase I.

{¶ 24} In July 2019, the court adopted the agreement of the parties to dismiss Count 6 from the counterclaim.

{¶ 25} In September 2019, the court dismissed all the remaining counterclaims pursuant to a motion to dismiss filed by appellants. The court determined that Counts 1, 4, and 5 were barred by the statute of limitations and that Counts 2 and 3 were barred by the plain language of R.C. 2721.03. The court ordered that "[Parma VTA's] Counterclaim is hereby dismissed in its entirety."

{¶ 26} The trial court proceedings were stayed while arbitration matters were sorted out by this court in *Gerston II*. During this stay, appellees filed two motions for reconsideration related to the dismissal of the counterclaims. Appellees also filed a motion for leave to file a supplemental counterclaim for equitable recoupment. After *Gerston II* was decided, the trial court eventually denied the two motions for reconsideration and the motion for leave to file a supplemental counterclaim.

{¶ 27} As the parties prepared for the Phase II trial, the parties began filing motions and documents in preparation for trial.

{¶ 28} Importantly, on February 5, 2022, Parma VTA served the report of its expert witness, Jeffrey Firestone ("Firestone"). Firestone's expert report provided calculations regarding the amounts that appellants allegedly owed to appellees pursuant to the acquisition loan and the Ladder Capital loan. Parma VTA also filed a final pretrial statement indicating that the amount set forth in Firestone's expert report should offset any damages that Parma VTA is found owing to appellants during Phase II of the trial.

{¶ 29} Appellants filed a motion in limine, seeking to exclude references to the acquisition loan and the Ladder Capital loan.

## B. Phase II – Damages Trial

{¶ 30} On May 2, 2022, the Phase II trial commenced before a jury.

{¶ 31} That same day, the trial court denied the motion in limine that the appellants had filed asking to bar references to the acquisition loan and the Ladder Capital loan. In other words, the trial court determined that it was permissible to discuss these loans at trial.

{¶ 32} During Phase II, GE 7400 maintained that it had not been paid any rental payments since the TIC agreement had been signed and sought to prove that Parma VTA owed it these outstanding rental payments. This was the main argument in the breach-of-contract action against Parma VTA.

{¶ 33} Parma VTA's expert, Firestone, testified in rebuttal that GE 7400 owed Parma VTA $2,600,000 for the acquisition loan and $4,800,000 for the

Ladder Capital loan. He testified that $7,400,000 should be deducted from any amount that appellees found was due in mostly rental income to GE 7400.

{¶ 34} Parma VTA maintained that from the signing of the TIC agreement through the trial, the tenants of the property had paid $14,009,325 in rental payments. Firestone testified that after business expenses and payments, GE 7400 and Parma VTA were entitled to $8,275,641 in take-home payments. Since GE 7400 was the 76.62 percent owner of the interest in the property, it was entitled to $6,340,795 of that amount. However, because appellants owed appellees $2,600,000 for the acquisition loan and $4,800,000 for the Ladder Capital loan, they were not entitled to any of that amount.

{¶ 35} In its charge to the jury, the trial court stated that appellants had the burden of "prov[ing] the facts necessary for their breach of contract, breach of fiduciary duty, and civil conspiracy claims by a preponderance of the evidence." (Tr. 937.) The court instructed that fraudulent conveyance was to be proven by clear and convincing evidence. At the close of trial, the jury found fully in favor of appellees on appellants' claims for breach of contract, fraudulent conveyance, and breach of fiduciary duty. As part of their verdict, the jury answered several interrogatories pertaining to their verdict, as follows:

> THE COURT: I will begin with interrogatories starting with interrogatory number 1. Do you find by a preponderance of the evidence that defendant Parma VTA, LLC is liable to plaintiff Parma GE 7400, LLC for breach of the TIC agreement? The answer is no and it is signed by all jurors.
>
> With regard to interrogatory 2, that is not filled out.

Interrogatory number 3: Do you find by clear and convincing evidence that defendant Parma VTA, LLC is liable to plaintiff GE 7400 for fraudulent conveyance under Revised Code 1336.04(A)? The answer is no. That is signed by seven.

Interrogatory 4 is not filled out.

Interrogatory number 5: Do you find by a preponderance of the evidence that Parma VTA, LLC owed plaintiff Parma GE 7400, LLC a fiduciary duty? The answer is no. It's signed by seven.

Interrogatory number 6: Do you find by a preponderance of the evidence that defendant Parma VTA, LLC breached its fiduciary duty to plaintiff Parma GE 7400, LLC? The answer is no. And it is signed by seven.

Interrogatory number 7 is not completed.

Interrogatory number 8: Do you find by a preponderance of the evidence that defendant Parma VTA, LLC is liable to plaintiff, the Gerston Family Trust for civil conspiracy as [it] relates to Parma GE 7400, LLC? The answer is no. It is signed by seven.

Interrogatory number 9: Do you find by a preponderance of the evidence that defendant Alan Robbins is liable to plaintiff the Gerston Family Trust for civil conspiracy as it relates to Parma GE 7400, LLC? The answer is no. Signed by seven.

Interrogatory number 10, do you find by a preponderance of the evidence that defendant Leah Robbins is liable to plaintiff the Gerston Family Trust for civil conspiracy as it relates to Parma GE 7400, LLC? The answer is no and it is signed by seven.

Interrogatory 11 is not filled out.

Interrogatory number 12: Do you find by a preponderance of the evidence that defendant Leah Robbins is liable to plaintiff Parma GE 7400, LLC for civil conspiracy as it relates to Parma GE 7400, LLC? The answer is no and it is signed by seven.

Interrogatory number 13: Do you find by a preponderance of the evidence that Defendant AKMS, LP[1] is liable to plaintiff Parma GE 7400, LLC for civil conspiracy as [it] relates to Parma GE 7400, LLC? The answer is no, signed by seven.

Interrogatory number 14: Do you find by a preponderance of the evidence that defendant Alan Robbins is liable to plaintiff Parma GE 7400, LLC? The answer is no. And it is signed by seven.

Interrogatory number 15: Do you find by a preponderance of the evidence that defendant Parma VTA, LLC is liable to plaintiff Parma GE 7400, LLC for civil conspiracy as it relates to Parma GE 7400, LLC? The answer is no signed by seven.

Interrogatory number 16 is not filled out.

(Tr. 1080-1083.)

## C. Post-Phase II Trial Motions

{¶ 36} Appellants timely filed motions for judgment notwithstanding the verdict and a motion for a new trial. The trial court denied both motions in August 2022, but the decisions did not become final and appealable until March 14, 2023, when the trial court issued a journal entry with Civ.R. 54(B) language.

{¶ 37} Appellants initiated the instant appeal from journal entries issued on May 19, 2022; two from August 24, 2022; and March 14, 2023.

{¶ 38} Appellants did not comply with App.R. 16 by properly delineating its assignments of error in the brief. Nonetheless, the briefs are sufficient for us to discern the arguments; appellees responded to the merits of the information within the brief; and the appellant did not file a reply brief correcting the assumed errors.

---

[1] AKMS, LP is another entity under Robbins's control.

Therefore, we elect to proceed with the review of this appeal in the interests of justice, and in the interests of putting an end to this lengthy litigation.

{¶ 39} We presume that the assigned errors correspond to the "statement of the issues presented for review," which are as follows:

1. Whether the trial court erred as a matter of law by failing to apply and enforce at the Phase II trial (i) the existing law-of-the-case from the Phase I trial and appeal, and (ii) its ruling dismissing Appellees' counterclaim, which would have precluded Appellees' evidence and argument that Appellants' alleged obligation on two loans meant Appellants were not damaged by Appellees' conduct.

2. Whether the trial court committed reversible error when it allowed Appellees to present inadmissible evidence and argument that Appellants were not damaged because they had paid nothing for their ownership interest in the property.

3. Whether the trial court committed reversible error when it refused to grant Appellants' motion for judgment notwithstanding the verdict based on the foregoing errors of law.

## II. Law and Analysis

{¶ 40} We first address appellants' third assignment of error that appears to pertain to the trial court's denial of its motion for judgment notwithstanding the verdict. The brief and the motion for judgment notwithstanding the verdict appears to contest the jury's verdicts as to (1) breach of the TIC agreement; and (2) breach of fiduciary duty.

{¶ 41} When reviewing a motion for judgment notwithstanding the verdict, we employ a de novo standard of review. *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90 (1987). In reviewing a motion for judgment notwithstanding the verdict,

[t]he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.

*Posin v. ABC Motor Court Hotel*, 45 Ohio St.2d 271, 275 (1976).

{¶ 42} Turning first to the breach of the TIC agreement, appellants argue that "reasonable minds cannot differ here. The jury's defense verdict on GE 7400's breach-of-contract claim cannot be supported by the evidence under Ohio law. The TIC agreement requires [Parma] VTA to make profit distributions; it did not. [Parma] VTA kept all of the profits for itself. That constitutes a breach. . . ."

{¶ 43} In an action for breach of contract, the plaintiff must prove (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *DPLJR, Ltd. v. Hanna*, 2008-Ohio-5872, ¶ 16 (8th Dist.), citing *Jarupan v. Hanna*, 2007-Ohio-5081, ¶ 18 (10th Dist.).

{¶ 44} An action for breach of fiduciary duty requires (1) the existence of a fiduciary duty; (2) the failure to observe the duty; and (3) an injury resulting proximately therefrom. *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988).

{¶ 45} We find that the record contains substantial evidence supporting that Parma VTA did not breach the TIC agreement nor did it breach any fiduciary duty.

{¶ 46} Appellants maintain that breach of contract was undisputed because there was no portion of the contract that allowed Parma VTA to simply withhold distributions for managing the outstanding debts of the property. Parma VTA

rebutted this evidence by pointing to numerous sections of the TIC agreement where reasonable minds could find that withholding the payments to pay any outstanding debts was in compliance with the TIC agreement, including, but not limited to section 2.2 (providing that Parma VTA "shall pay all expenses of the Tenants in Common with respect to the property") and section 4.2 (providing that Parma VTA is "authorized to pay the Tenant(s) in Common entitled to reimbursement the sums advanced").

{¶ 47} Appellants also claim that because appellees did not assert a breach-of-contract claim against them, appellees could not prove that appellants did not perform under the contract. We note, however, that the burden to demonstrate that appellants performed under the contract was on appellants. Appellees merely demonstrated evidence to the contrary. Appellees presented evidence in rebuttal that pursuant to section 4.2 of the TIC agreement, GE 7400 was responsible for "any future cash needed in connection with the ownership, operation and maintenance of the property" and demonstrated that GE 7400 breached that by failing to respond to the cash call for the Ladder Capital loan.

{¶ 48} Regarding damages, appellants presented evidence that it was entitled to distributions in the amount of $6,340,795 that appellees withheld. Appellees presented evidence to the contrary demonstrating that GE 7400 *had* received all of the "distributions" to which it was entitled, but that the distributions were applied to the outstanding debts required to maintain ownership of the property.

{¶ 49} We agree, therefore, that there was substantial evidence upon which the jury could have found that appellees did not breach the TIC agreement.

{¶ 50} Turning to the jury's verdict finding that appellees did not breach its fiduciary duty to appellants, we review the evidence presented.

{¶ 51} The main question in determining whether a fiduciary relationship has been created is "whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking." *Hope Academy Broadway Campus v. White Hat Mgt. L.L.C.*, 2015-Ohio-3716, ¶ 18, citing *Strock*, 38 Ohio St.3d 207, 216. Evidence of a fiduciary duty is an issue of fact that depends on the circumstances of the case. *Gracetech Inc. v. Perez*, 2012-Ohio-700, ¶ 12 (8th Dist.).

{¶ 52} Appellants argue that appellees owed them a fiduciary duty because Parma VTA was the property manager of the property. There is not much in the record beyond this allegation that the fiduciary duty arose from the context of Parma VTA's role as property manager.

{¶ 53} Accordingly, we agree that there was substantial evidence (or a lack thereof) in the record upon which the jury could have found that there was no fiduciary relationship between GE 7400 and Parma VTA.

{¶ 54} Appellants' third assignment of error is overruled.

{¶ 55} Assignments of error one and two relate to the admission of evidence at trial. The admission or exclusion of relevant evidence is reviewed for an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Relevant evidence is evidence "having any tendency to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evidence, although relevant, may not be admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶ 56} In the first assignment of error, appellants argue that the court erred in allowing appellees to present evidence relating to the "financial contributions" of each party to the property. Appellants argue that the trial court committed prejudicial error in allowing "testimony regarding [appellees'] claims about the alleged acquisition loan that the trial court had dismissed as time barred and about the Ladder Capital Loan that the trial court had voided as to GE 7400 in Phase I."

{¶ 57} Appellants point to allegedly inflammatory statements made by appellees' counsel during trial, nearly all of which pertain to the fact that the trust and/or Kenneth did not contribute anything to the initial purchase of the property, and still had not since the acquisition loan remained outstanding. Appellants argue that this was (1) prejudicial to the jury because it essentially accused Kenneth and the trust of theft, but also (2) not relevant because the issue of ownership had already been decided, despite Kenneth and/or the trust's lack of initial investment into the property.

{¶ 58} In support of its argument, appellants cite Evid.R. 401 and 403, arguing that the purchase money disparity was not probative, and, if even slightly

probative, was outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

{¶ 59} We cannot ignore, however, that the jury found that appellees were not liable to appellants for rental payments, period. In other words, the jury determined that appellees did not breach the TIC agreement and therefore, did not need to reach the issue of damages and any setoff amounts. The jury's decision was clear: appellees did not breach the TIC agreement by failing to remit payment distributions to appellants.

{¶ 60} The jury was specifically instructed as follows:

The issue you will decide is whether [Parma] VTA breached the TIC agreement by failing to remit payment distributions to GE 7400 and whether GE 7400 was in material breach of the TIC agreement at the time of [Parma] VTA's breach.

. . .

If you find by the greater weight of the evidence that GE 7400 proved its claim then you must further decide whether VTA's breach caused GE 7400 to suffer any damages and if so in what amount.

If you find by the greater weight of the evidence that GE 7400 failed to prove any part of its claim then you will find for [Parma] VTA.

(Tr. 943-944.)

{¶ 61} Appellants believe that the jury's verdict was tainted by the supposedly "irrelevant" evidence regarding Kenneth's acquisition of the property and the outstanding acquisition loan. Appellants argue that the offset evidence was improper because (1) all of the counterclaims pertaining to the offset had been dismissed and (2) Parma VTA's counsel expressly disclaimed that it was seeking

setoff or recoupment in its opening statement. Both of these are true, but they are consistent with what the jury heard and considered. The jury did not receive any instructions regarding offsetting the amount of damages, nor was the jury instructed that any amount of damages owed pursuant to appellants' breach-of-contract claim should be subtracted from the outstanding debts that GE 7400 may have owed to Parma VTA. In fact, the jury received clear instructions as to what evidence was necessary to find breach of contract: "failing to remit payment distributions to GE 7400." (Tr. 943.)

{¶ 62} It is clear from the record that appellees were utilizing the evidence concerning Kenneth's acquisition of the property and his contribution to the purchase price to rebut claims of breach of contract, breach of fiduciary duty, fraudulent conveyance, and civil conspiracy claims. Parma VTA expressly disclaimed that it was seeking setoff, and the jury was not instructed that it was to consider setoff in determining the amount of damages, if they determined that GE 7400 was damaged.

{¶ 63} Moreover, appellants' closing statement to the jury addressed all of this; the closing statement, at multiple points, warned the jury that two breaches do not cancel each other out and that the jury's sole duty is to determine whether Parma VTA breached the TIC agreement by not paying GE 7400 the rental distributions that it was allegedly owed. (Tr. 1067, 1071, 1074.)

{¶ 64} We recognize that if the jury explicitly found a breach of contract and then calculated damages that included setoff from the unpaid purchase price, that

would have been improper since setoff was waived and the counterclaim dismissed. However, that is not what happened here. The jury did not even reach the monetary calculation because it did not find a breach of contract. Indeed, the fact that the trial court allowed evidence concerning the purchase of the property is not the same as allowing Parma VTA to pursue setoff or recoupment.

{¶ 65} Appellants' first assignment of error is overruled.

{¶ 66} In its second assignment of error, appellants assert that the trial court erred in "permitting [Parma] VTA to advance a legally wrong damages theory." In so arguing, appellants argue that appellees relied on a prejudicial damages theory "that has not been good law for over three centuries." Appellants claim that the jury was instructed that they need not award damages if they believe that GE 7400 had not really been "damaged" since Kenneth received the property without paying back the acquisition loan.

{¶ 67} Appellants note that the proper measure of contract damages is "'the amount necessary to place the non-breaching party in the position he or she would have been had the breaching party fully performed under the contract.'" *TLOA Acquisitions, L.L.C. v. Unknown Heirs*, 2021-Ohio-3678, ¶ 21 (8th Dist.), quoting *W & W Dev. Co. v. Hedrick*, 1999 Ohio App. LEXIS 1679, *18-19 (8th Dist. Apr. 15, 1999). Appellants argue that appellees erroneously suggested to the jury that damages are fixed to "the amount of consideration" instead of the measure in *TLOA* and *Hedrick*.

{¶ 68} This assignment of error is resolved in the same way that the first assignment of error was resolved. The jury never reached the damages calculation because the jury did not find that Parma VTA even breached the TIC agreement. Therefore, the jury did not use *any* theory to calculate damages.

{¶ 69} Additionally, to the extent that this assignment of error asserts that even alluding to this type of calculation was prejudicial, we disagree. As with the first assignment of error, a condition precedent to finding damages was to first find that the TIC agreement had been breached; the jury did not. Therefore, no damages were calculated or awarded. We again recognize that if the jury reached the issue of damages, any setoff dealing with the acquisition loan would absolutely be improper; that is not what happened. The jury did not reach damages because they did not find breach of the TIC agreement.

{¶ 70} Appellants' second assignment of error is therefore overruled.

### III. Conclusion

{¶ 71} The trial court did not err in its admission of evidence nor did it err in denying appellants' motion for judgment notwithstanding the verdict or motion for a new trial.

{¶ 72} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

MARY J. BOYLE, P.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS (WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., DISSENTING:

{¶ 73} I respectfully dissent from the majority's opinion and would dismiss this appeal pursuant to App.R. 16. I find appellants' brief deficient because it fails to substantially comply with the requirements of Ohio Rules of Appellate Procedure. Pursuant to App.R. 16(A)(3) and (4), the appellants shall include in their brief "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected" and "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates."

{¶ 74} The appellants' brief does not identify any assignments of error. The statement of the issues presented for review does not reference the place in the record where each error is reflected and does not reference the assignments of error to which each issue relates. Compliance with the above-referenced rules is mandatory, and a court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the

assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." App.R. 12(A)(2). *See Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 14 (1st Dist.); *Jabr v. Columbus*, 2023-Ohio-2781, ¶ 10 (10th Dist.); *Stevens v. Little Stars Early Learning Ctr., L.L.C.*, 2022-Ohio-380, ¶ 22 (8th Dist.).

{¶ 75} It is difficult to identify the appellants' assignments of error and the issues they raised. They do not list any assignments of error but argue seven different points of contention and only list three issues. The unorganized brief makes it difficult to establish what errors are assigned by the appellants. "Because appellants' brief fails to comply with the requirements of App.R. 16, I would decline to examine appellants' arguments and dismiss this appeal. App.R. 12(A)(2)." *Columbus v. Payne*, 2023-Ohio-2461, ¶ 7 (10th Dist.). *See also S. Euclid v. Hardin*, 2023-Ohio-2382, ¶ 38 (8th Dist.).

{¶ 76} I understand that my colleagues want finality to this controversy; however, I would dismiss this appeal for failure to comply with App.R. 16.