[Cite as *113703*, 2024-Ohio-6019.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF PEPPER PIKE,                    :

      Plaintiff-Appellee,          :

                               No. 113703

      v.                           :

R.E.S.,                                :

      Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** December 26, 2024

---

Criminal Appeal from the Shaker Heights Municipal Court
Case No. 22CRB00920

---

### *Appearances:*

Stephen L. Byron, Director of Law, City of Pepper Pike; Diemert & Associates Co., L.P.A., and Thomas M. Hanculak, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant R.E.S. ("appellant") appeals his conviction after being found guilty by a jury of one misdemeanor count of violating a protection order. For the reasons that follow, we reverse his conviction and remand to the trial court for a new trial.

{¶ 2} Appellant was charged with a one count of violating a protection order, which was alleged to have occurred in September 2022. The protection order, titled "Consent Agreement and Domestic Violence Civil Protection Order" ("DVPO"), was issued on February 28, 2020, and is set to expire on January 3, 2025. The DVPO covered appellant's former wife ("D.M.") and prohibited appellant, in part, from contacting her place of employment or any of her coworkers.

{¶ 3} On September 12, 2022, appellant contacted the human resources director ("director") at D.M.'s place of employment, a school district. Appellant had been terminated from D.M.'s health insurance plan after their divorce, and he contacted the school district to inquire about his removal because, according to appellant, he suffered from long COVID and needed health insurance to pay for his medication. As a result, a school resource officer contacted the Pepper Pike Police Department, who investigated and eventually charged appellant with one count of violating a protection order. The matter proceeded to a jury trial. Appellant proceeded pro se, with standby counsel.

{¶ 4} The director testified that he is responsible for overseeing employee benefits, including health insurance, for employees at the school district.

On September 12, 2022, he received an email from appellant regarding appellant's removal from D.M.'s health care plan. The director testified that appellant was removed from the health plan after he and D.M. divorced.

{¶ 5} Sergeant Eric Kuznik of the Pepper Pike Police Department testified that he received a report from a school district resource officer, who reported that appellant had contacted the director via email. Sergeant Kuznik subpoenaed the appellant's email provider and was able to confirm that the email address that the subject email came from belonged to appellant. Sergeant Kuznik testified that he reviewed the DVPO, verified it was still active, and determined that the order specifically prohibited appellant from contacting D.M.'s place of employment as well as anyone who is employed there.

{¶ 6} D.M. testified that she is employed by the district. She confirmed the existence of the DVPO. She also confirmed that she had asked the school district to remove appellant from her health care plan because they were no longer married.

{¶ 7} During D.M.'s cross-examination, appellant attempted to introduce his and D.M.'s judgment entry of divorce ("divorce decree"). Appellant explained that he was planning to use the divorce decree as evidence that he did not act intentionally because he relied on a provision in the divorce decree that terminated all restraining orders, including, appellant thought, the DVPO. The court ruled that the decree would not be allowed into evidence for several reasons, including that it would be improper to allow the document to be introduced for the purpose of questioning D.M. about appellant's state of mind, because D.M. would be unable to

testify to appellant's thoughts or intentions. The court ruled, however, that appellant could testify as to his own intent in sending the email to the district.

{¶ 8} Appellant testified in his own defense. He testified that he was suffering from long COVID and needed health insurance. According to appellant, he and his family have been devastated by the divorce and his medical diagnoses, so he contacted the director to try and get his health insurance reinstated. Appellant thought that the section of the divorce decree that terminated the restraining orders included the DVPO.

{¶ 9} The city introduced the DVPO into evidence. The DVPO stated that only the court "may modify or terminate the protection order. Unless the court modifies or terminates this order, you may be arrested for violating this protection order." The appellant conceded that he never petitioned the court to amend or terminate the DVPO, admitted that the DVPO provided that it would still be active in the event of a divorce, and stated that he never received notice stating the DVPO was no longer active.

{¶ 10} The jury found appellant guilty of the sole count in the indictment. The trial court sentenced appellant to 180 days in jail, with 177 days suspended; a $500 fine; and probation. The court also ordered appellant to complete behavioral counseling, psychiatric/psychological evaluation and treatment, refrain from alcohol and nonprescriptive drug consumption, and comply with the DVPO.

{¶ 11} Appellant filed a notice of appeal and raises the following assignments of error for our review:

I. The Trial Court abused its discretion by preventing [appellant] from even attempting to introduce a relevant document that went directly to his mens rea.

II. It was plain error for the trial court to allow the admission of propensity evidence during the city's opening, case-in-chief, and closing.

III. The prosecution argued facts not in evidence during its closing, prejudicing [appellant], and the trial court committed plain error in allowing the statement.

IV. The cumulative effect of multiple errors at trial, even if singularly not sufficient to warrant reversal, together deprived appellant of a fair trial and a denial of due process.

**Divorce Decree**

{¶ 12} In the first assignment of error, appellant contends that the trial court abused its discretion when it refused to allow him to introduce his divorce decree into evidence.

{¶ 13} The admission or exclusion of relevant evidence is reviewed for an abuse of discretion. *Gerston v. Parma VTA, LLC*, 2024-Ohio-3005, ¶ 55 (8th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173 (1987). "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 2006-Ohio-2815, ¶ 62. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 14} Here, appellant tried to enter his divorce decree into evidence during D.M.'s cross-examination. At side bar, appellant explained that he was planning to have D.M. authenticate the divorce decree and question her concerning a provision in the decree that provided that all restraining orders were dissolved. The trial court denied appellant's request, finding that the divorce decree had not been certified or authenticated; appellant had failed to turn the document over in discovery; D.M. could not testify as to appellant's state of mind; the decree was irrelevant because it was from a separate case and did not trump the DVPO; and the court did not allow the city to discuss why D.M. sought the DVPO so the court would not allow appellant to discuss the divorce decree.

{¶ 15} Evid.R. 901(A) states all evidence must be properly authenticated before it is admissible into evidence. *State v. Lake*, 2003-Ohio-332, ¶ 16 (7th Dist.). The rule further provides that authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims, including the testimony of a witness with knowledge that the document is what it is claimed to be. *See* Evid.R. 901(A) – (B)(1). D.M., as one of the parties to the divorce, was in the position to authenticate the divorce decree, which she had signed. Although we agree that D.M. would not be able to testify to appellant's state of mind, had appellant attempted to ask such a question, the city could have objected.

{¶ 16} The city argued that the divorce decree was properly excluded because it was never provided in discovery pursuant to Crim.R. 16. However, the record reflects that appellant emailed the city several documents in discovery, but,

according to the city, it never saw the emails because they went to the prosecutor's spam email folder. It was not until the end of trial that the city found the missing emails. The record does not reflect whether the divorce decree was one of the emails that the city discovered; the court's exclusion of the divorce decree was made prior to the discovery of the emails.

{¶ 17} The trial court also concluded that the divorce decree was irrelevant evidence. We disagree. "'Relevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The divorce decree was relevant because appellant claimed that he thought that the provision in the decree terminated restraining orders issued during the divorce also terminated the DVPO. Therefore, the divorce decree, which included a provision that terminated all the previous restraining orders, made the existence of the fact that appellant was under the belief that the protection order was no longer in effect more probable than it would have been without admission of the divorce decree.

{¶ 18} The city also argued, and the court agreed, that appellant's belief that the divorce decree terminated the DVPO was irrelevant to the mens rea recklessness element of the crime of violating a protective order because appellant was mistaken in his belief that the divorce decree terminated the DVPO.

{¶ 19} Appellant was convicted of violating a protection order, pursuant to R.C. 2919.27(A), which provides that "[n]o person shall recklessly violate the terms of . . . a protection order."

{¶ 20} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶ 21} Here, appellant should have had the opportunity to show that he was not disregarding the known risk of violating a protection order because he did not believe that the order was still active. A legal document, like his divorce decree, that indicated that "restraining orders" are dissolved is certainly relevant to whether appellant recklessly violated the terms of the DVPO; the jury could have concluded that appellant's honest belief was that the DVPO had been terminated by the divorce decree and appellant was not reckless for failing to realize that the DVPO survived the divorce decree. Simply, the jury should have been allowed to decide the validity of appellant's claim in determining whether he acted recklessly when he emailed the district.

{¶ 22} Appellant also contests the trial court's conclusion that admission of the divorce decree would cause jury confusion. It is well-settled that trial courts have "wide latitude" to impose reasonable limits on cross-examination in order to

prevent, among other things, harassment, prejudice, and confusion of the issues. *State v. McKelton*, 2016-Ohio 5735, ¶ 144 (2016). Here, the trial court found that appellant's plan to introduce the divorce decree during D.M.'s cross-examination would have a high likelihood of confusing the jury. We disagree. The jury could have differentiated between the divorce decree and the DVPO and determined whether appellant recklessly violated the DVPO or had a bona fide belief that the divorce decree terminated the DVPO.

{¶ 23} Finally, the trial court ruled that appellant could not introduce the divorce decree because the decree did not, in fact, dissolve the DVPO. Appellant concedes that the DVPO survived the divorce decree. But appellant was not offering the decree to show that it terminated the DVPO; he was trying to introduce the decree to show that he believed the DVPO was no longer in place. This goes directly to the issue of mens rea.

{¶ 24} In light of the above, we conclude that the trial court abused its discretion when it did not allow appellant to introduce his divorce decree into evidence. The first assignment of error is sustained.

**Denial of Due Process**

{¶ 25} In the second and third assignments of error, appellant argues that the trial court erred and abused its discretion when it allowed the city to discuss appellant's convictions and introduce other facts not in evidence.

{¶ 26} Appellant objects to three sets of statements made during trial: (1) statements the city made during its opening argument; (2) portions of D.M.'s direct examination; and (3) statements the city made during its closing argument.

{¶ 27} Appellant concedes that he did not object to most of the now-challenged statements and, as to those statements, he has waived all but plain error. Plain error is an obvious error or defect in the trial court proceedings that affects a defendant's substantial rights and the outcome of the trial. Crim.R. 52(B); *State v. Rogers*, 2015-Ohio-2459, ¶ 22. The Ohio Supreme Court has admonished appellate courts to "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Specific to allegations of prosecutorial misconduct, under a plain-error standard, a reviewing court asks whether a defendant would not have been convicted in the absence of the improper conduct. *State v. Abdullahi*, 2024-Ohio-418, ¶ 29 (10th Dist.).

**Opening Arguments**

{¶ 28} During its opening argument, the city brought up appellant's previous domestic violence conviction, arguing that it wanted to give "context" to the case because domestic violence was what led D.M. to seek a protection order. Appellant objected, and the trial court overruled his objection. The city told the jury:

> The relationship, in effect it goes badly and poorly to the pinpoint where there is a domestic violence. And it was severe domestic violence. . . . [D.M.] filed a police report. In fact, one of the neighbors

called the police. . . . [Appellant] hires an attorney. They appear in court, and he pleads no contest . . . to the domestic violence charge. And he's sentenced on that. Placed on probation.

{¶ 29} Later in its opening argument, the city told the jury about another conviction:

Just to show you that there's no mistake and to give more context, in – just a few months ago . . . this individual went to a jury trial, again on the same exact type of charge, violation of a protective order. He was found guilty and sentenced. One of the stipulations that the judge put into the sentencing document was that he was not to violate the protection order, and he violates it again.

{¶ 30} The city's statement that appellant had previously been convicted of domestic violence against D.M. was highly prejudicial. Moreover, we note that the city never questioned appellant regarding the reason the DVPO was issued during his cross-examination; the information was not offered into evidence through appellant's testimony. The trial court mentioned at one point that it was not going to let the city discuss the conviction; however, the court overruled appellant's objection when the city mentioned it in opening arguments, essentially giving support to the city's statement. *See State v. Keenan*, 66 Ohio St.3d 402, 410 (1993) (In considering the prosecutorial misconduct, the court noted that "[t]he trial court gave no curative instruction . . . ; indeed, it overruled an objection, giving the prosecutor's comment its approval in the jury's eyes.") Although the city argues it was trying to give the current case "context," it cannot be said that the probative value of the statement outweighed the prejudice to appellant.

**{¶ 31}** The city also told the jury that appellant had previously violated the DVPO, was charged and convicted, and, as part of his sentence, ordered not to violate it *again*. But the underlying violation in that case occurred in October 2020, a month after the violation in this case. Thus, the city's statement was an improper statement of the facts.

**Closing Arguments**

**{¶ 32}** Over appellant's objection, the city stated in its closing argument that the genesis of the DVPO was "marriage, children, assault . . . divorce, protection order, another prosecution, and yet another prosecution." No testimony or evidence was presented at trial that D.M. had ever been charged with or convicted of assault. Although D.M. testified that appellant had been convicted of violating a protective order (for an offense that occurred after the offense in this case), there was no evidence presented at trial that appellant has ever committed the crime of assault.

**{¶ 33}** The city also told the jury during closing arguments that appellant texted D.M.'s coworker "vile sexual conduct." This allegation appears to have come out of nowhere; there was no testimony or other evidence presented at trial that appellant sent inappropriate text messages to D.M.'s coworker. The prejudice in the city's statement is apparent because the jury could infer that appellant violated the DVPO again. Thus, in both its opening and closing arguments, the trial court allowed the city to argue inflammatory facts not in evidence.

**{¶ 34}** We are cognizant that the effect of any statements apparently not based on facts in evidence made by a prosecutor during opening and closing

arguments are mitigated when the trial court instructs the jury, as it did in this case, that opening and closing arguments are not evidence. *See State v. Kirkland*, 2020-Ohio-4079, ¶ 117 (2020). But here the city made a series of inappropriate and/or factually incorrect statements in telling the jury (1) appellant committed domestic violence against D.M.; (2) appellant committed assault; and (3) appellant sent inappropriate text messages to D.M.'s coworker.

**Victim Testimony**

{¶ 35} During D.M.'s direct examination, the city elicited the following testimony:

> Q. . . . [D.M.] were you involved in litigation with [appellant] with regards to the [DVPO]?
>
> A. Yes.
>
> Q. And when was that?
>
> A. So, he had violated the [DVPO] in October of 2022.
>
> Q. Okay. Do you recall going to trial in April of 2023?
>
> A. We went to trial in June of 2023.
>
> . . .
>
> Q. What . . . was the issue of the trial?
>
> A. That he violated the [DVPO].
>
> Q. And did that go to a jury?
>
> A. Yes.
>
> Q. What was the verdict?

A. Guilty.

{¶ 36} Evid.R. 404(B)(1) provides that "[e]vidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character." This type of evidence is commonly referred to as "propensity evidence" because its purpose is to demonstrate that the accused has a propensity to commit the crime in question. *State v. Slusarczyk*, 2024-Ohio-4790, ¶ 34 (8th Dist.), citing *State v. Curry*, 43 Ohio St.2d 66 (1975).

{¶ 37} While Evid.R. 404(B)(1) bars the use of other-acts evidence to show propensity, Evid.R. 404(B)(2) allows evidence of an accused's other crimes, wrongs, or acts to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The evidence must prove something other than the accused's disposition to commit certain acts.

{¶ 38} In *State v. Hartman*, 2020-Ohio-4440, the Ohio Supreme Court reiterated the three-part guide set forth in *State v. Williams*, 2012-Ohio-5695, for determining the admissibility of other-acts evidence. The *Hartman* Court stated that for other-acts evidence to be admissible (1) the evidence must be relevant as set forth in Evid.R. 401; (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith, but must instead be presented for a legitimate other purpose as set forth in Evid.R. 404(B); and (3) the probative

value of the evidence cannot be substantially outweighed by the danger of unfair prejudice as set forth in Evid.R. 403. *Id.* at ¶ 20-33.

> "Whether the other-acts evidence is relevant under the first step of *Williams* is dependent upon whether the evidence is offered for a nonpropensity purpose as set forth in the second step of *Williams*, i.e., a legitimate purpose for which the evidence is offered, and whether the nonpropensity purpose goes to a material issue in the case."

*Slusarczyk* at ¶ 37, quoting *State v. Hale*, 2024-Ohio-1587, ¶ 65 (8th Dist.).

**{¶ 39}** "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *Hartman* at ¶ 22, citing Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed. 2019). However, the trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice to the defendant pursuant to Evid.R. 403(A) involves an exercise of judgment and is reviewed for an abuse of discretion. *Hartman* at ¶ 30.

**{¶ 40}** The city claims that evidence of appellant's other DVPO violation was admissible to show that appellant did not make a mistake when he emailed D.M.'s place of employment. In other words, the city claims that reference to appellant's conviction was made for the purpose of dispelling appellant's mistake defense, i.e., that the probative value of appellant's other DVPO violation demonstrates that his actions in this case were not made by accident or mistake. But the October 2022 incident occurred a month after the incident giving rise to this case. It is unclear to this court how referencing a future bad act can be used to determine a person's state of mind for a prior alleged offense. It does not matter that appellant was convicted

of the October 2022 violation before the conviction in this case. The October 2022 violation was committed *after* the incident giving rise to this case. Future conduct cannot inform past conduct. Therefore, testimony regarding the October 2022 violation was irrelevant, was only presented to the jury to show appellant's character and was not presented for a legitimate other purpose as set forth in Evid.R. 404(B); the probative value of the evidence was substantially outweighed by the danger of unfair prejudice to appellant.

{¶ 41} The trial court's decision to allow in the evidence pursuant to Evid.R. 404(B) was in error.

{¶ 42} During oral argument before this court, the city claimed that R.C. 2945.54 allows evidence of this type, i.e., evidence of a future bad act. The city did not mention the Revised Code section in its brief on appeal nor does R.C. 2945.54 govern evidence in criminal cases. R.C. 2945.54 provides:

> The examination of witnesses by deposition in criminal cases shall be taken and certified, and the return thereof to the court made as for taking depositions under sections 2319.05 to 2319.31, inclusive, of the Revised Code. The commissioners appointed under section 2945.50 of the Revised Code to take depositions shall receive such compensation as the court directs, to be paid out of the county treasury and taxed as part of the costs in the case.

{¶ 43} R.C. 2945.54 is inapplicable to this case.[1]

---

[1] The city introduced appellant's LEADS report into evidence during Sergeant Kuznik's testimony. The report stated that there was an active restraining order against appellant and that appellant had "violent tendencies" and "prior domestic violence." The court redacted appellant's social security number but did not redact any other prejudicial information. Appellant did not object to the report's admission at trial and has not raised the issue on appeal.

**Prejudicial Error**

{¶ 44} "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he [or she] is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *Hartman*, 2020-Ohio-4440, at ¶ 20, citing *Curry*, 43 Ohio St.2d 66. "That philosophy is premised on our understanding of human nature: the typical juror is prone to 'much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime.'" *Hartman* at *id.*, quoting *State v. Hector*, 19 Ohio St.2d 167 (1969).

{¶ 45} The city's statements during opening and closing arguments were improper and prejudicial. However, "[a]n improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Treesh*, 90 Ohio St.3d 460 (2001). The city is entitled to some freedom of expression in summation, and opening and closing arguments must be viewed in their entirety when determining whether a remark was prejudicial. *State v. Keenan*, 66 Ohio St.3d 402, 409 (1993), citing *State v. Woodards*, 6 Ohio St.2d 14, 26 (1966).

{¶ 46} Although the trial court admonished the jury that the parties' opening statements and closing arguments were not evidence, the prejudice to appellant was apparent throughout trial starting with the city's opening statements where it discussed other bad acts, to improper witness testimony about a past conviction, to

closing arguments where the city argued inflammatory facts not in evidence and highlighted appellant's prior conviction.

{¶ 47} Having found that the city's statements made during opening and closing arguments as well as testimony elicited from D.M. regarding appellant's conviction was improper, we must determine whether the city's statements and D.M's testimony constitute a denial of due process. We consider the effect the misconduct had on the jury in the context of the entire trial. *Keenan* at 410. "One factor relevant to the due-process analysis is whether the misconduct was an isolated incident in an otherwise properly tried case." *Id.* That is not the case here; the prejudice to appellant permeated the entire trial.

{¶ 48} Considering the above, the improper statements during opening and closing argument coupled with D.M.'s testimony about appellant's prior conviction unfairly prejudiced appellant and deprived him of a fair trial.

{¶ 49} The second and third assignments of error are hereby sustained.

**Cumulative Error**

{¶ 50} In the fourth and final assignment of error, appellant contends that cumulative error deprived him of a fair trial.

{¶ 51} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of error during a trial deprives a defendant of a fair trial even though each of the alleged instances of error do not individually constitute cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196 – 197 (1987).

{¶ 52} The trial court denied appellant a chance to admit his divorce decree into evidence, allowed the prosecutor to make improper and prejudicial comments during opening and closing arguments, and allowed in evidence of appellant's prior conviction through witness testimony.

{¶ 53} Generally, we consider whether the evidence of the accused's guilt was overwhelming when deciding whether cumulative evidence deprives a defendant of due process. *See State v. Echols*, 128 Ohio App.3d 677, 700 (1st Dist.1998) (finding cumulative error deprived appellant of a fair trial). Here, appellant admitted he sent the email to D.M.'s place of employment and the DVPO clearly prohibited that type of conduct; one could conclude that there was substantial evidence that appellant committed a violation of the protection order. However, we must consider whether the foregoing errors contributed to appellant's conviction. We find that they did, and even if the errors did not individually constitute cause for reversal, the cumulative effect of those errors deprived appellant of a fair trial.

{¶ 54} Therefore, we sustain appellant's fourth assignment of error.

{¶ 55} Judgment reversed. Case remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY J. BOYLE, J., CONCURS;
MICHELLE J. SHEEHAN, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)


MICHELLE J. SHEEHAN, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 56} Respectfully, I concur with the judgment of the court reversing the conviction in this case and remanding the matter for a new trial by sustaining R.E.S.'s second and third assignments of error but write separately because I disagree with the majority opinion's resolution of the first and fourth assignments of error.

{¶ 57} In his first assignment of error, R.E.S. argues that the trial court abused its discretion by prohibiting him from entering the divorce decree into evidence because "it went directly to his mens rea." R.E.S sought to introduce the divorce decree in order to argue that he was not reckless because he believed the divorce decree's termination of "restraining orders" also terminated the domestic violence protection order that was in effect.

{¶ 58} The mens rea of the crime of violation of a protection order is recklessness. R.C. 2919.27(A). "'[A] "mistake of fact" is not available as a defense to

a crime requiring a mental state of recklessness.'" *State v. Justice*, 2024 Ohio-2574, ¶ 15 (1st Dist.), quoting *State v. Parrett*, 2014-Ohio-4524, ¶ 18 (12th Dist.), citing *State v. Neville*, 1998 Ohio App. LEXIS 5519, *20 (7th Dist. Nov. 17, 1998) ("Appellant was not charged with a specific intent crime as the requisite mental state to a violation of R.C. 3734.03 is 'recklessly.' . . . Therefore, the trial court did not abuse its discretion in failing to give a jury instruction as to mistake of fact."), *State v. Snowden*, 7 Ohio App.3d 358, 363 (10th Dist. 1982.) Further, "[i]t is well-settled that the mistake-of-law defense is not recognized in Ohio." *State v. Pinkney*, 36 Ohio St.3d 190, 198 (1988).

{¶ 59} Whether R.E.S. made a mistake of law or fact by conflating the definitions of "restraining order" and "protection order" or simply made a mistake of fact as to the scope of the divorce decree, neither mistake is a defense to a crime requiring a mental state of recklessness. Because of this, I would find that the trial court did not abuse its discretion by prohibiting the introduction of the divorce decree and would overrule the first assignment of error.

{¶ 60} As to the majority's resolution of the fourth assignment of error, I would simply find the assignment to be moot in light of the resolution of the second and third assignments of error.